IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Maxwood Furniture, Inc., | ) | Case No.: 4:25-cv-13809-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Chubb European Group SE, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court are Defendant Chubb European Group SE's ("Chubb") Motion to Transfer Venue (DE 4), Motion to Dismiss (DE 5), and Motion for Protective Order and Stay of Discovery (DE 10), together with Plaintiff Maxwood Furniture, Inc.'s ("Maxwood") Second Motion for Enlargement of Time (DE 11). Maxwood filed a consolidated response opposing the transfer and dismissal motions (DE 13), and Chubb replied (DE 14). Maxwood also opposed the protective-order motion (DE 15), and Chubb replied (DE 17). Chubb responded that the enlargement motion became moot when Maxwood timely filed its opposition. (DE 16.)

For the reasons below, the Motion to Transfer is denied without prejudice; the Motion to Dismiss is granted in part and denied in part; the Motion for Protective Order is granted in part and denied in part; and the Second Motion for Enlargement of Time is denied as moot.

1

## I.     BACKGROUND

### A.     The Policies

Maxwood is a South Carolina furniture importer and distributor. It alleges that it imports furniture through South Carolina ports and stores the furniture at facilities in Mullins and Marion, South Carolina. (DE 1-1 at 4–5, ¶¶ 7–12.) Chubb issued three successive insurance policies that Maxwood attaches to and relies upon in its Complaint.

The first policy, Policy No. B1230WM05866A23 (the "2023 Policy"), covered the period from January 22, 2023, through January 15, 2024. (DE 1-1 at 5, ¶ 13; *id.*, Ex. 1.) The second, Policy No. B1262SM0910324 (the "2024 Policy"), covered January 15, 2024, through January 15, 2025. (*Id.* at 9, ¶ 46; *id.*, Ex. 2.) The third, Policy No. B1262SM0910325 (the "2025 Policy"), covered January 15, 2025, through January 15, 2026. (*Id.* at 13, ¶ 79; *id.*, Ex. 3.) The 2023 Policy does not contain the New York choice-of-law and forum provision at issue here. Chubb acknowledges that distinction. (DE 4-1 at 8.)

The 2024 and 2025 Policies are captioned "Marine Cargo Stock Throughput Insurance." (DE 1-1 at 47, 90.) They insure goods carried by land, water, or air from any port or place in the world to any other port or place, including domestic transit and storage. Coverage attaches when the subject matter becomes Maxwood's risk or Maxwood assumes an interest "anywhere in the world" and continues while it is "in transit and/or in store or elsewhere," including while held as stock or undergoing processing. (*Id.* at 48–49, 91–92.) The Policies also incorporate cargo, war-risk, and

strike clauses and address general average, salvage, sue-and-labor obligations, the Safety of Life at Sea Convention, and seaworthiness. (*Id.* at 49, 56, 58, 60, 64, 92, 95, 101, 103, 107.)

Each of the 2024 and 2025 Policies contains the following "Choice of Law and Jurisdiction" provision:

> This insurance shall be governed by the laws of New York and subject to the exclusive jurisdiction of the courts of New York.

(*Id.* at 66, 109.) Each Policy also contains an Institute Service of Suit Clause that begins, "[n]otwithstanding any provision elsewhere in this insurance relating to jurisdiction," and provides that, at the Assured's request, the underwriters will submit to a court of competent jurisdiction in the United States. The clause further reserves the underwriters' rights to remove an action, seek remand, or "seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein." (*Id.*)

## B.    The Claim and Procedural History

Maxwood alleges that it became aware of damage to furniture in which it had an interest "during the periods of the Policies" and submitted a claim on the Policies on November 20, 2024. (DE 1-1 at 14, ¶¶ 81–82.) The written notice attached to the Complaint is dated December 2, 2024. Its reference line identifies the 2024 Policy and "any other policies with insurance potentially implicated by the claim(s) as described herein," and the notice states that Maxwood had recently become aware of losses to which one or more of the referenced policies potentially applied. (*Id.* at 132.) Chubb denied coverage, and Maxwood filed this action in the Marion County Court of

3

Common Pleas in November 2025. Chubb removed the action on December 10, 2025. (DE 1.)

The Complaint asserts claims for declaratory relief, breach of contract, bad-faith refusal to pay insurance benefits, and attorney's fees under S.C. Code Ann. § 38-59-40. Chubb moved the next day to transfer the action to the Southern District of New York and to dismiss all claims arising under the 2023 Policy, along with Counts Three and Four to the extent they arise under the 2024 and 2025 Policies. (DE 4; DE 5.)

On December 23, 2025, before the parties conducted a Rule 26(f) conference, Maxwood transmitted twelve interrogatories and forty-three requests for production to Chubb. (DE 10 at 2; DE 10-1; DE 10-2; DE 10-3.) Chubb then moved for a protective order prohibiting that discovery or, alternatively, staying discovery while the transfer motion remained pending. (DE 10.) Maxwood later agreed to withdraw its original discovery requests without prejudice but requested permission to conduct narrower discovery concerning the negotiation, delivery, and underwriting of the 2024 and 2025 Policies and their forum provisions. (DE 15 at 5–6.)

Maxwood also moved to extend its deadline to respond to Chubb's transfer and dismissal motions until after Chubb answered the requested discovery. (DE 11.) Maxwood nevertheless filed its consolidated response on January 28, 2026, the deadline previously set by the Court. (DE 13; *see* DE 9.)

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). The court accepts well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). To survive dismissal, the complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Labels, conclusions, and a formulaic recitation of elements do not suffice. *Twombly*, 550 U.S. at 555.

The court may consider documents attached to the Complaint and documents integral to it whose authenticity is not disputed. *See Secretary of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). When a plaintiff attaches to, or incorporates into, his complaint a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper. *See Goines v. Valley Community Services Board*, 822 F.3d 159, 166–68 (4th Cir. 2016). In relying on this document, the court should discern the purpose for which it is presented before adopting its contents as true for purposes of the motion to dismiss. *Id.* Rule 9(c) separately provides that, in pleading conditions precedent, "it

suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c).

## B.     Transfer and Maritime Contract Provisions

Section 1404(a) permits a district court, "[f]or the convenience of parties and witnesses, in the interest of justice," to transfer a civil action to another federal district where the action might have been brought or to which all parties consent. 28 U.S.C. § 1404(a). Ordinarily, the movant bears the burden of showing that transfer is warranted after consideration of private and public interest factors, and the plaintiff's forum choice receives substantial weight. *See Trustees of the Plumbers & Pipefitters National Pension Fund v. Plumbing Services, Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

A valid mandatory forum-selection clause changes that analysis. The plaintiff's forum choice receives no weight, private interest factors are deemed to favor the preselected forum, and transfer should be denied only when extraordinary public interest considerations clearly disfavor enforcement. *See Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49, 62–66 (2013). But Section 1404(a) authorizes transfer only within the federal system. When a clause selects a state or foreign tribunal, the appropriate enforcement mechanism is ordinarily *forum non conveniens*, not Section 1404(a). *Id.* at 60, 66 n.8. When a party seeks to invoke the doctrine of *forum non conveniens* and is successful, dismissal is the only appropriate remedy because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in

6

the place where brought and let it start all over again somewhere else. *See id.* at 66 n.8 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)); *see also Whitaker v. Monroe Staffing Services, LLC*, 42 F.4th 200, 207 (4th Cir. 2022).

Federal maritime law governs the enforceability of choice-of-law and forum-selection clauses in maritime contracts. A contract's maritime character turns on its nature and character and whether its principal objective is maritime commerce, not simply on the location of performance or loss. Inland transportation or storage does not necessarily defeat maritime character. *See Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 24–27 (2004). Forum-selection clauses in maritime contracts are prima facie valid unless enforcement would be unreasonable under the circumstances. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Nonnegotiation or inclusion in a form contract does not, without more, make such a provision unenforceable. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991).

Likewise, choice-of-law provisions in maritime contracts are presumptively enforceable, subject to narrow exceptions when the selected law conflicts with a controlling federal statute or established federal maritime policy, or when the parties lack any reasonable basis for choosing the selected jurisdiction. *See Great Lakes Insurance SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 70–78 (2024). A forum state's contrary insurance policy or greater interest in the dispute does not overcome that federal maritime presumption. *Id.* at 77–79.

The threshold question is what forum the contract selects. The Fourth Circuit distinguishes clauses that designate courts "in" a State from those that designate courts "of" a State. The former ordinarily speaks geographically and includes state and federal courts located there; the latter speaks in terms of sovereignty and ordinarily identifies only the State's own courts. *See FindWhere Holdings, Inc. v. Systems Environment Optimization, LLC*, 626 F.3d 752, 755–56 (4th Cir. 2010). That threshold inquiry requires the court to read the jurisdiction provisions together, giving effect to their plain language without rendering either provision superfluous. *See Whitaker*, 42 F.4th at 210.

## C.     Protective Orders and Timing of Discovery

Rule 26(b)(1) permits discovery of nonprivileged matter that is relevant to a claim or defense and proportional to the needs of the case. Rule 26(c)(1) authorizes the court, for good cause, to protect a party from annoyance, embarrassment, oppression, or undue burden or expense by forbidding discovery, prescribing its terms, or limiting its scope. The moving party bears the burden of a particular and specific showing of good cause, and the court has broad discretion to supervise discovery. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); 8A *Wright and Miller's Federal Practice and Procedure* § 2035 (3d ed. 2026). Rule 26(c)(3) incorporates Rule 37(a)(5) for an award or apportionment of expenses.

Rule 26(d)(1) generally prohibits a party from seeking discovery before the Rule 26(f) conference unless a rule, stipulation, or court order authorizes earlier discovery. Rule 26(d)(2) permits a party to deliver Rule 34 requests more than twenty-

8

one days after service of the summons and complaint, but those requests are not considered served until at the first Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1)–(2). Although the filing of a dispositive motion does not automatically stay discovery, a court may defer merits discovery when a threshold issue may materially narrow or dispose of the action and the balance of burden and prejudice supports a temporary limitation. *See* 8A *Wright & Miller*, supra, §§ 2038, 2040.

## III.    DISCUSSION

### A.    Motion to Transfer

#### 1.    The 2024 and 2025 Policies Are Maritime Contracts, and Their New York Choice-of-Law Provisions Are Enforceable

Chubb contends that the 2024 and 2025 Policies are maritime insurance contracts and that their New York choice-of-law provisions are presumptively enforceable under federal maritime law. (DE 4-1 at 5–6; DE 14 at 2–4, 9.) Maxwood responds that the alleged damage occurred while its furniture was stored in South Carolina warehouses, characterizes the Policies as property coverage, and argues that South Carolina law governs under S.C. Code Ann. § 38-61-10 and the State's regulatory interest in insurance covering property and interests located here. (DE 13 at 10–13, 22.) The Court agrees with Chubb that the later Policies are maritime contracts and that their New York choice-of-law provisions are enforceable.

Maxwood's description focuses on the asserted loss rather than the contracts as a whole. The 2024 and 2025 Policies insure worldwide cargo movements by land, water, and air, including domestic transit and storage, and continue coverage while the goods are in transit, in store, held as stock, or undergoing processing. (DE 1-1 at

9

48–49, 91–92.) Their incorporation of cargo and war-risk clauses and their provisions addressing general average, salvage, seaworthiness, SOLAS, and sue-and-labor obligations further reflect their maritime character. (*Id.* at 49, 56, 58, 60, 64, 92, 95, 101, 103, 107.)

The alleged land-based location of the loss does not alter the Policies' principal objective. *Kirby* applies a conceptual rather than spatial inquiry and holds that land-based performance does not destroy a contract's maritime character when the contract principally concerns maritime commerce. 543 U.S. at 24–27. Here, the Policies principally insure internationally moving cargo through an integrated transit-and-stock-throughput cycle. Their broad storage component does not convert them into standalone insurance on real property. The 2024 and 2025 Policies are therefore maritime contracts.

Maxwood's South Carolina public-policy argument does not overcome the federal presumption governing the New York choice-of-law provisions. *Great Lakes* rejected materially the same theory: a State's contrary insurance policy or greater regulatory interest does not displace the parties' selection of law in a maritime insurance contract. 601 U.S. at 77–79. Section 38-61-10 therefore does not provide a basis for disregarding the provisions.

Maxwood's affidavit likewise does not establish a recognized exception. It states that Maxwood did not negotiate the provisions directly with Chubb, received no premium discount for them, and recalls receiving the full Policies after payment. (DE 13-1 at 3, ¶¶ 16–22.) Those facts do not show that New York lacks a substantial

10

or reasonable relationship to the transaction, that application of New York law would conflict with a controlling federal statute or established federal maritime policy, or that the provisions were procured by fraud or overreaching. *See Great Lakes*, 601 U.S. at 76–79. Nor does the absence of individual negotiation, standing alone, invalidate standardized forum language. *See Carnival Cruise Lines, Inc.*, 499 U.S. at 593–95.

The New York choice-of-law provisions are therefore enforceable. The effect of the Policies' forum language, including its interaction with the Service of Suit Clauses, is addressed separately below.

### 2. The Policy Language Does Not Select the Southern District of New York

Chubb asks the Court to transfer the entire action to the Southern District of New York under Section 1404(a), contending that the 2024 and 2025 Policies contractually select that federal forum. (DE 4 at 1; DE 4-1 at 8–10.) The Policy language does not support that premise.

Standing alone, the provision subjecting the insurance to the "exclusive jurisdiction of the courts of New York" speaks in terms of sovereignty. (DE 1-1 at 66, 109.) Under *FindWhere*, federal district courts are courts of the United States, not courts "of" the State in which they sit. 626 F.3d at 755–56. Thus, if that provision controls without qualification, it identifies New York state courts, not the Southern District of New York. The word "exclusive" makes the provision mandatory, but it does not alter the identity of the courts selected. *See Whitaker*, 42 F.4th at 204, 210 & n.7. In *Whitaker*, the agreement expressly identified both "the federal courts of the United States" and "the courts of the State of New York," located in New York City,

before submitting the parties to the exclusive jurisdiction of those courts. *Id.* at 204. The Policies here contain no comparable identification of a federal court.

The Institute Service of Suit Clauses do not establish a different contractual selection of SDNY. They begin "[n]otwithstanding any provision elsewhere in this insurance relating to jurisdiction" and provide that, at the Assured's request, the underwriters will submit to a court of competent jurisdiction in the United States. (DE 1-1 at 66, 109.) If those clauses broaden Maxwood's forum choice, they permit suit in a competent United States court rather than designate SDNY exclusively. Their reservation of the underwriters' rights to seek removal, remand, or transfer preserves only procedural rights otherwise available by law; it is not an agreement that SDNY is the selected forum. *See FindWhere*, 626 F.3d at 755–56 (holding that language contemplating transfer did not convert a sovereignty-based designation into a federal forum selection).

The Court need not conclusively resolve which jurisdiction provision controls in every procedural posture. Under either reading, the Policies do not preselect SDNY, so *Atlantic Marine's* modified Section 1404(a) framework for a contractually chosen federal forum does not apply. And if Chubb seeks enforcement of a clause selecting New York state court, Section 1404(a) cannot provide that relief; the ordinary mechanism is *forum non conveniens*. 571 U.S. at 60, 66 n.8. Chubb did not move for *forum non conveniens* dismissal, and the Court will not convert the requested federal transfer into a materially different dismissal remedy. The Motion

12

to Transfer is, therefore, denied without prejudice to any properly presented enforcement theory.

### 3.    The Ordinary Section 1404(a) Factors Do Not Support Transfer

Because the Policies do not contractually select SDNY, any independent request to transfer the action there is governed by the ordinary Section 1404(a) factors. That is plainly true of the claims under the 2023 Policy, which contains no New York forum provision, and it is also true of the later Policy claims to the extent Chubb seeks SDNY apart from an enforceable contractual selection. Chubb argues that transferring all claims together would avoid piecemeal litigation. (DE 4-1 at 10–11.)

The balance does not favor transfer. Maxwood is a South Carolina corporation; the insured furniture, warehouses, alleged damage, and claim investigation are centered in South Carolina; and Maxwood identifies South Carolina witnesses and records while stating that it knows of no New York witness, property, or record connected with the claim. (DE 13-1 at 1–5, ¶¶ 2-10, 23, 28–34.) Chubb is organized under foreign law and headquartered in London, not New York. (DE 1, ¶4.) Chubb submitted no affidavit identifying a New York witness or source of proof. New York law governs claims under the later Policies, but that consideration does not outweigh the remaining private and public interest factors, Maxwood's chosen forum, and South Carolina's local interest in a dispute centered on property and events here. Chubb has not carried its burden to show that SDNY is the more convenient forum for the action.

13

**B.      Motion to Dismiss**

**1.      Claims Under the 2023 Policy**

Chubb seeks dismissal of all claims under the 2023 Policy because the Complaint allegedly fails to plead a loss during that policy period and fails to allege immediate notice through Amwins as the Policy directs. (DE 4-1 at 4–5; DE 14 at 10–11.) The Policy's claims procedure requires notice through Amwins when the insured first becomes aware of loss or damage. (DE 1-1 at 38.)

The allegations are sparse but sufficient at this stage. Maxwood alleges that it became aware of damage to furniture "during the periods of the Policies," defines the Policies to include the 2023 Policy, and alleges that it filed a claim "on the Policies." (DE 1-1 at 13–14, ¶¶ 79, 81–82.) It also alleges generally that the relevant conditions precedent, obligations, and notices were satisfied, and alternatively pleads waiver and estoppel. (*Id.* at 17, ¶¶ 104, 107.) Rule 9(c) permits conditions precedent to be pleaded generally.

The attached December 2024 notice does not conclusively contradict those allegations. Although its reference line identifies the 2024 Policy, it also invokes "any other policies" potentially implicated by the claim and states that one or more referenced policies may apply. (*Id.* at 132.) The exhibit does not establish that it was the only notice provided, conclusively fix when the relevant physical damage occurred or was discovered, or negate the pleaded alternatives of waiver and estoppel. At the pleading stage, the Court may not draw a disputed inference from an attached document against the pleader when the document does not necessarily establish

14

Chubb's interpretation. *See Goines*, 822 F.3d at 166–68. Chubb may have substantial policy period and notice defenses, but they require an evidentiary record.

Accordingly, the Motion to Dismiss is denied to the extent it seeks dismissal of claims under the 2023 Policy. This ruling does not prevent Chubb from raising policy period, notice, causation, waiver, estoppel, or other coverage defenses on an appropriate record.

### 2.    Counts Three and Four Under the 2024 and 2025 Policies

Chubb next seeks dismissal of Count Three, for bad-faith refusal to pay insurance benefits, and Count Four, for attorney's fees under S.C. Code Ann. § 38-59-40, insofar as those claims arise from the 2024 and 2025 Policies. Chubb argues that New York law governs those Policies and does not recognize the South Carolina causes of action pleaded. (DE 4-1 at 5–7; DE 14 at 9–10.)

The New York choice-of-law provisions are enforceable. The 2024 and 2025 Policies are maritime contracts; New York supplies a reasonable and well-developed body of commercial law; and Maxwood identifies no controlling federal statute or established federal maritime policy that enforcement would violate. *See Great Lakes Ins. SE*, 601 U.S. at 76–79. Section 38-61-10 and South Carolina's asserted regulatory interest do not create an exception to the federal maritime rule. *Id.*

Count Three incorporates the Complaint's preceding allegations and asserts that Chubb failed properly to investigate, handle, adjust, and pay Maxwood's claim. (DE 1-1 at 19–20, ¶¶ 117–122.) New York does not recognize an insurer's alleged bad-faith failure to investigate or pay a first-party insurance claim as an independent tort

15

merely because the insured characterizes the conduct as negligent, reckless, or otherwise tortious. *See New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316–20 (1995). An insurer's obligations to investigate in good faith and pay covered claims arise from the insurance contract. *Id.* at 318–20. A separately pleaded claim for breach of the implied covenant of good faith and fair dealing therefore is duplicative when it seeks the same damages for substantially the same alleged contractual injury as the accompanying breach-of-contract claim. *See id.*; *Harris v. Provident Life & Accident Insurance Co.*, 310 F.3d 73, 80–81 (2d Cir. 2002). The authorities confirm that allegations of inadequate investigation and wrongful denial ordinarily remain contractual in nature rather than supplying an independent tort.

Count Three does allege claims-handling conduct beyond the bare refusal to pay. Maxwood alleges that Chubb failed to conduct an investigation consistent with applicable standards, disregarded underwriting information allegedly inconsistent with its stated basis for denial, failed to employ reasonable standards for prompt investigation and settlement, and compelled Maxwood to institute this action. (DE 1-1 at 19–20, ¶¶ 117–122.) The Complaint, however, does not allege an injury or category of damages arising from that conduct distinct from the damages sought in Count Two.

Count Two seeks the selling price of the damaged furniture and the broadly defined "Other Expenses." Those expenses include costs incurred to identify and inspect damaged furniture, storage and debris-removal expenses, transportation costs, claim-preparation expenses, attorney's fees incurred to pursue coverage, and

16

other damages to be proved at trial. Count Two alleges that those losses were proximately caused by Chubb's failure or refusal to pay benefits under the Policies. Count Three incorporates those allegations and states only that the challenged claims-handling conduct proximately damaged Maxwood; it identifies no separate loss attributable to that conduct.

New York law may permit an insured to recover consequential contract damages caused by an insurer's breach when those damages were reasonably foreseeable, within the parties' contemplation at the time of contracting, proximately caused by the breach, and capable of proof with reasonable certainty. *See Bi-Economy Market, Inc. v. Harleysville Insurance Co. of New York*, 10 N.Y.3d 187, 192–96, 886 N.E.2d 127 (Ct. App. N.Y. 2008). That rule provides a contractual measure of damages; it does not create an independent tort remedy or sustain a separate contractual count seeking the same damages as the breach-of-contract count.

Count Three is therefore **DISMISSED WITH PREJUDICE** insofar as it asserts an independent South Carolina tort claim arising under the 2024 and 2025 Policies. To the extent Count Three may be construed as asserting a New York contractual claim for breach of the implied covenant of good faith and fair dealing, that claim is dismissed as duplicative of Count Two. This ruling does not foreclose Maxwood from seeking through Count Two, subject to the pleadings and proof, consequential damages otherwise recoverable under New York contract law. Nor does it preclude Maxwood from seeking leave under Rule 15, if otherwise appropriate, to

17

plead a nonduplicative New York contractual claim based on materially distinct conduct and damages.

Count Four expressly seeks attorney's fees under S.C. Code Ann. § 38-59-40. (DE 1-1 at 20, ¶¶ 123–125.) The Complaint alleges that Chubb failed to pay within ninety days after demand and that its refusal was without reasonable cause or in bad faith within the meaning of that South Carolina statute. Because New York law governs the 2024 and 2025 Policies, § 38-59-40 does not supply the pleaded remedy for claims arising under those Policies.

Section 38-59-40(4), which provides that the statute applies in cases filed in or removed to federal court, does not alter that conclusion. That subsection confirms that a federal forum does not itself preclude relief under the statute when South Carolina substantive law otherwise applies. It does not require application of South Carolina substantive law notwithstanding an enforceable New York choice-of-law provision.

Count Four is therefore **DISMISSED WITH PREJUDICE** under its pleaded South Carolina statutory theory insofar as it arises under the 2024 and 2025 Policies. The Court does not decide whether attorney's fees or fee-related damages may be available under a contract, procedural rule, sanctioning authority, or another applicable source of law.

Because the 2023 Policy contains no New York choice-of-law provision and Chubb's request to dismiss the claims arising under that Policy is denied, Counts

18

Three and Four remain pending under their pleaded South Carolina theories only insofar as they arise under the 2023 Policy.

## C.     Motion for Protective Order and Stay of Discovery

Maxwood transmitted its interrogatories and document requests before the parties conducted a Rule 26(f) conference. (DE 10 at 2; DE 15 at 2–3.) The interrogatories were premature under Rule 26(d)(1) because no rule, stipulation, or court order authorized them. The Rule 34 requests could be delivered early, but they were not considered served until the Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d)(2). Chubb, therefore, had no obligation to answer the December 23 interrogatories or document requests before that conference.

Maxwood has since agreed to withdraw the original requests without prejudice. (DE 15 at 5.) The Court accepts the withdrawal. To the extent Chubb seeks an order confirming that it need not respond to those requests, the Motion is granted. Maxwood may serve appropriate discovery after the Rule 26(f) conference, subject to the Federal Rules and any scheduling order.

The Court denies Maxwood's request for pre-conference discovery directed to the forum provisions. The complete Policy language is already in the record, and the present transfer motion turns on whether that language designates SDNY and whether the ordinary Section 1404(a) factors warrant transfer. Discovery into underwriting files, premium payment, delivery, communications, and separately stated consideration is not necessary to decide those questions. Moreover, the absence of individual negotiation alone does not invalidate forum language, and Maxwood has

19

not made a focused preliminary showing of fraud directed to the inclusion of the provisions. *See Carnival Cruise*, 499 U.S. at 593–95. The requested early discovery is, therefore, necessary nor proportional to resolution of the motions presented. This ruling does not foreclose appropriate merits discovery after the Rule 26(f) conference.

Chubb's alternative request to stay all discovery pending the transfer motion is denied as moot because this Order resolves that motion. The parties shall conduct their Rule 26(f) conference within fourteen days of this Order and proceed under the Federal Rules and the Court's scheduling procedures. Nothing in this ruling determines the merits of objections Chubb may assert to later, properly served discovery. In light of the mixed disposition and the circumstances presented, each party shall bear its own expenses associated with the protective order motion. *See* Fed. R. Civ. P. 26(c)(3), 37(a)(5)(C).

## D.    Second Motion for Enlargement of Time

Maxwood requested an extension of the January 28, 2026, deadline to respond to the transfer and dismissal motions. (DE 11.) Maxwood filed its response on January 28. (DE 13.) The requested enlargement no longer presents a live issue and is denied as moot.

## IV.    CONCLUSION

For the reasons set forth above, it is hereby ORDERED as follows:

1.    Chubb's Motion to Transfer Venue (DE 4) is **DENIED WITHOUT PREJUDICE**. The 2024 and 2025 Policies do not designate the Southern District of New York as a contractually selected forum, and the ordinary factors under 28 U.S.C. § 1404(a) do not support transfer of the action there. This denial is without prejudice to any properly presented *forum non conveniens* or other enforcement theory.

20

2.  Chubb's Motion to Dismiss (DE 5) is **GRANTED IN PART AND DENIED IN PART**.

    a.  The Motion is **DENIED** to the extent it seeks dismissal of claims arising under the 2023 Policy.

    b.  Count Three is **DISMISSED WITH PREJUDICE** insofar as it asserts an independent South Carolina tort claim arising under the 2024 and 2025 Policies. To the extent Count Three may be construed as asserting a New York contractual claim for breach of the implied covenant of good faith and fair dealing, that claim is dismissed as duplicative of Count Two. This ruling does not foreclose Maxwood from seeking through Count Two, subject to the pleadings and proof, consequential damages otherwise recoverable under New York contract law. Nor does it preclude Maxwood from seeking leave under Rule 15, if otherwise appropriate, to plead a nonduplicative New York contractual claim based on materially distinct conduct and damages.

    c.  Count Four is **DISMISSED WITH PREJUDICE** under its pleaded South Carolina statutory theory insofar as it arises under the 2024 and 2025 Policies. The Court does not decide whether attorney's fees or fee-related damages may be available under a contract, procedural rule, sanctioning authority, or another applicable source of law.

    d.  Counts Three and Four remain pending under their pleaded South Carolina theories only insofar as they arise under the 2023 Policy.

3.  Chubb's Motion for Protective Order and Stay of Discovery (DE 10) is **GRANTED IN PART AND DENIED IN PART**. The Court accepts Maxwood's withdrawal without prejudice of its December 23, 2025, interrogatories and requests for production, and Chubb need not respond to them. Maxwood's request for pre-conference forum discovery is denied. Chubb's request for a continuing stay is denied as moot. Each party shall bear its own expenses associated with the Motion.

4.  The parties shall conduct the conference required by Rule 26(f), Fed. R. Civ. P., within fourteen (14) days after entry of this Order and shall thereafter proceed in accordance with the Federal Rules of Civil Procedure and the Court's scheduling procedures.

5.  Maxwood's Second Motion for Enlargement of Time (DE 11) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

21

_____
Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 3, 2026